UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GILBERT P. HYATT,
            Plaintiff,
   v.

MICHELLE K. LEE,
            Defendant.

Civil Action No. 1:09-cv-1864 (RCL)
Civil Action No. 1:09-cv-1869 (RCL)
Civil Action No. 1:09-cv-1872 (RCL)
Civil Action No. 1:05-cv-2310 (RCL)

## USPTO MOTION TO REQUIRE MR. HYATT TO POST A BOND

Under 35 U.S.C. § 145, not only is Mr. Hyatt allowed to have judicial review of the final administrative decisions of the U.S. Patent and Trademark Office (USPTO), but he is also allowed to introduce new evidence that was not before the agency during the patent prosecution proceedings. Because of the unique nature of civil actions brought under section 145 and the burden these proceedings place on the USPTO, the statute also requires that, regardless of the outcome of these cases, Mr. Hyatt must pay "[a]ll the expenses of the proceedings." 35 U.S.C. § 145.

The section 145 actions at issue have been pending in this Court for a long time. Trial is now imminent. The USPTO has already incurred substantial expenses in these four actions, and it anticipates incurring even more significant expenses in the coming few months, with upcoming preparation for trial and three weeks of scheduled trial time. Further, Mr. Hyatt has told the USPTO that he does not believe he has to pay the USPTO's expenses in this action. Recently, the U.S. District Court for the Eastern District of Virginia, which hears all section 145 actions filed after 2011, required a section 145 plaintiff to post a bond as a condition of continuing litigation where the applicant failed to acknowledge that he would have to pay the USPTO's expenses. *Taylor v. Lee*, No. 1:15-cv-1607, slip op. at 4 (E.D. Va. July 12, 2016). And in an even more

recent case in which the USPTO did not request a bond and the plaintiff failed to pay at the end, the Eastern District of Virginia court admonished the USPTO that, where it "believes that a plaintiff who files a § 145 action . . . may be unable to pay the [US]PTO's expenses as required by § 145, the [US]PTO may consider it prudent to request the court to require the plaintiff to post a bond for estimated expenses before proceedings begin."  *Realvirt, LLC v. Lee*, No. 1:15-cv-963, slip op. at 3 n.4 (E.D. Va. Jan. 31, 2017).  In light of the Virginia court's orders and the significant past and anticipated future expenses in these four section 145 actions, the USPTO respectfully requests that the Court order Mr. Hyatt to post a bond for $680,000, which includes the expenses the USPTO has already incurred and a conservative estimate of its anticipated future expenses, as a condition of his proceeding with trial in these section 145 actions.

## Statutory and Factual Background

In these actions, Mr. Hyatt seeks judicial review of the USPTO's denial of four patent applications.  As a disappointed patent applicant, for each of his patent applications, Mr. Hyatt had a choice between two different avenues of review.  Under 35 U.S.C. § 141, Mr. Hyatt could have appealed the final decision of the Patent Trial and Appeal Board ("Board," formerly the Board of Patent Appeals and Interferences) directly to the U.S. Court of Appeals for the Federal Circuit, in which case the Federal Circuit would have reviewed the Board's decision on the basis of the administrative record—much like the process for judicial review of almost all administrative action.  *See id.* §§ 143, 144; *Kappos v. Hyatt*, 132 S. Ct. 1690, 1694 (2012).

Alternatively, Mr. Hyatt had the option—which he elected—to file a civil action against the USPTO in this Court under section 145.  Section 145 provides as follows:

> An applicant dissatisfied with the decision of the Patent Trial and Appeal Board in an appeal under section 134(a) may, unless appeal has been taken to the United States Court of Appeals for the Federal Circuit, have remedy by civil action against the Director in the

> United States District Court for the Eastern District of Virginia [before September 2011, the United States District Court for the District of Columbia] if commenced within such time after such decision, not less than sixty days, as the Director appoints. . . . *All the expenses of the proceedings shall be paid by the applicant.*

35 U.S.C. § 145 (emphasis added).

In a section 145 action, the applicant may introduce new evidence that he failed to provide to the USPTO during the administrative proceedings in support of the proposed patent claims. *See Hyatt*, 132 S. Ct. at 1694. However, under the express terms of section 145, when an applicant elects this type of proceeding, he bears the responsibility of paying for "[a]ll the expenses" of the action, regardless of outcome. *See Hyatt v. Kappos*, 625 F.3d 1320, 1337 (Fed. Cir. 2010) (en banc) (noting that "Congress imposed on the applicant the heavy economic burden of paying '[a]ll the expenses of the [section 145] proceedings' regardless of the outcome") (quoting 35 U.S.C. § 145), *aff'd*, 132 S. Ct. 1690 (2012); *see also* Order, *Disney Enter., Inc. v. Rea*, No. 13-1540 (Fed. Cir. Dec. 20, 2013) (ordering payment of $91,609 in expenses). "Congress enacted the expense provision of § 145 to discourage applicants from undertaking this type of proceeding, which enables them to introduce new evidence supporting their application in federal district court thereby raising the potential for gamesmanship and unnecessary expenditure of scarce governmental resources." *Taylor v. Lee*, No. 1:15-cv-1607, slip op. at 2 (E.D. Va. July 12, 2016) (citing *Kappos v. Hyatt*, 132 S. Ct. at 1694).

As the Supreme Court has recognized, the statutory term "expenses" is broader than "costs," and encompasses all litigation outlays. *See, e.g.*, *Taniguchi v. Kan Pacific Saipan, Ltd.*, 132 S. Ct. 1997, 2002 (2012) (holding that "[t]axable costs [under 28 U.S.C. § 1920] are a fraction of the nontaxable *expenses* borne by litigants for *attorneys*, experts, consultants, and investigators" (emphasis added)). As a result, the expenses that Mr. Hyatt is responsible for paying, as a statutory

3

condition of initiating and prosecuting these actions, include both fees paid to any expert witness(es) retained by the USPTO and fees and other outlays—which have already been incurred—associated with oral depositions.  Additionally, in an issue currently before the Federal Circuit, it is the USPTO's position that a section 145 plaintiff is also responsible for reimbursing the USPTO for its personnel expenses in this action.  *See Shammas v. Focarino*, 784 F.3d 219, 224 (4th Cir. 2015) (holding that the "plain language" of an analogous provision in trademark law requires that a disappointed applicant "who elects to initiate a de novo proceeding in the district court must pay all reasonable expenses of the proceeding," including the USPTO's personnel expenses, "whether he wins or loses"), *cert denied sub nom. Shammas v. Hirshfeld*, 136 S. Ct. 1376 (2016); *but see NantKwest, Inc. v. Lee*, 162 F. Supp. 3d 540 (E.D. Va. 2016) (holding that the USPTO's personnel expenses were not reimburseable as "expenses" within the meaning of Section 145), *appeal docketed*, No. 16-1794 (Fed. Cir. Apr. 5, 2016) (oral argument heard Feb. 9, 2017).

      The USPTO has conducted and will continue to conduct its litigation-related activities as efficiently as possible, minimizing the expenses it has incurred and will incur in defending these four actions. Nonetheless, the USPTO estimates that by the conclusion of the litigation, its expenses will likely amount to a minimum of approximately $687,048. Ex. 14. More specifically, the USPTO has already spent $467,548 in litigating these four cases—$267,308 in attorney and paralegal time and $191,240 in expert time, court reporter expenses, and other expenses.  Ex. 14 (compiling all expenses); Exs. 6, 7, 11-13.  The USPTO estimates that, to proceed through pretrial statements, motions in limine, preparation of exhibits and demonstratives, trial preparation, and trial itself, further litigation of Mr. Hyatt's cases will likely entail, for the USPTO's side, a minimum of 300 hours of expert time, at $455 per hour, plus lodging, airfare, and other incidentals for the USPTO's expert (for a total of $153,500), as well as a minimum of 880 hours of aggregate

attorney time, at approximately $75 per hour ($66,000). Ex. 14. These numbers are very rough, and very conservative, estimates; the USPTO estimates that, for four weeks in May (three of which are scheduled for trial), four attorneys will each spend forty hours per week, and that for 6 weeks leading up to trial, four attorneys will each spend ten hours per week in preparation. Ex. 14. The USPTO believes the actual amount of time spent may be higher. Also, these numbers assume that the cases proceed to trial as scheduled in May and that Mr. Hyatt receives no additional discovery related to the USPTO's prosecution laches defense.

In light of these circumstances, the USPTO has contacted Mr. Hyatt's counsel a number of times, both in writing and by phone, to ensure that Mr. Hyatt was aware of his legal obligation to reimburse the USPTO for "[a]ll the expenses" it has incurred or will incur over the course of this litigation, including expert fees and personnel expenses, even if he were to receive a favorable decision. *See* Exs. 1, 3, 4, 6, 7, 9, 10. Mr. Hyatt responded, repeatedly stating that he did not believe he would have to pay for attorney or expert expenses. Ex. 5 at 1 ("Section 145 does not make plaintiffs responsible for the PTO's litigation expenses."); Ex. 8 at 2 (same); *see also* Ex. 2. In fact, Mr. Hyatt has taken the position that section 145 requires him to pay "only court costs," which is in direct conflict with prior decisions from this Court. *Compare* Ex. 5 at 1 (also stating that "Mr. Hyatt will not agree to pay the PTO's calendar-year 2012 attorneys' *and expert's fees and expenses* in the above-referenced case" (emphasis added)), *with Sandvik Aktiebolag v. Samuels*, No. 89-cv-3127, 1991 WL 25774 (D.D.C. Feb. 7, 1991) (ordering a plaintiff in a section 145 action to pay the fees for the USPTO's expert).

### The Court Should Require Mr. Hyatt to Post a Bond of $680,000 as a Condition of Proceeding in These Actions

1.   It is well-established that a federal court's "authority to award costs to a prevailing party implies a power to require the posting of a bond reasonably calculated to cover those costs,

5

even though no statute or rule expressly authorizes such an order." *Gay v. Chandra*, 682 F.3d 590, 594 (7th Cir. 2012) (collecting cases); *see also Ehm v. Amtrak Bd. of Directors*, 780 F.2d 516, 517 (5th Cir. 1986) ("Even in the absence of a local rule . . . , a district court has inherent power to require security for costs when warranted by the circumstances of the case."); *In re Am. President Lines, Inc.*, 779 F.2d 714, 326 n.18 (D.C. Cir. 1985) (per curiam); *Hawes v. Club Ecuestre El Comandante*, 535 F.2d 140, 143 (1st Cir. 1976); Fed. R. Civ. P. 83(b) ("A judge may regulate practice in any matter consistent with federal law, 28 U.S.C. §§ 2072 and 2075, and the district's local rules."); Local Civil Rule 65.1.1 (describing form of bond).

    2.    As an initial matter, the U.S. District Court for the Eastern District of Virginia has recently required a plaintiff to post a bond in a section 145 action. *Taylor*, No. 1:15-cv-1607, slip op. at 4. The same court has also recently instructed the USPTO in a case in which it did not seek a bond that, "where the [US]PTO believes that a plaintiff who files a § 145 action has meager assets and may be unable to pay the [US]PTO's expenses as required by § 145, the [US]PTO may consider it prudent to request the court to require the plaintiff to post a bond for estimated expenses before proceedings begin." *Realvirt*, No. 1:15-cv-963, slip op. at 3 n.4. Here, although the USPTO understands that Mr. Hyatt has in the past had some wealth, *see, e.g.*, *Franchise Tax Bd. of Cal. v. Hyatt*, 136 S. Ct. 1277, 1279-80 (2016), his current financial status is unknown. Further, the USPTO has already incurred significant expenses in these four litigations, and it anticipates that in the next few weeks, with intensive trial preparation by its attorneys and expert witness, it will incur substantially more expenses.

Beyond the Virginia court's recent decisions and the anticipated surge of USPTO expenses in the next several weeks, in assessing whether the imposition of a security bond would be appropriate in a given instance, courts have looked to a variety of factors. Not all of the factors necessarily apply in this case, given the expanse of section 145's "expenses" provision.

The First Circuit has held that the "pertinent factors for the district court to consider" include, but are not limited to, "[any] ownership by a nondomiciliary plaintiff of attachable property in the district, the likelihood of success on the merits, the presence of a coplaintiff who is domiciled in the district, the probable length and complexity of the litigation, the conduct of the litigants, and the purposes of the litigation." *Hawes*, 535 F.2d at 144. Similarly, courts have considered "the probability of plaintiff's success on the merits, the background and purpose of the suit, and the reasonableness of amount of the posted security viewed from the perspective of both plaintiff and defendant," *Ehm*, 780 F.2d at 517 (citing *Aggarwal v. Ponce School of Medicine*, 745 F.2d 723 (1st Cir. 1984)), as well as whether "there is reason to believe that the prevailing party will find it difficult to collect its costs" when the litigation ends, *Gay*, 682 F.3d at 594 (internal citation omitted); *see also id*. (noting that the practice of requiring security bonds "has deep historical roots," and was "developed to help resident defendants collect costs when victorious against non-resident plaintiffs whose property was beyond the reach of the court" (internal citation omitted)).[1]

Finally, several courts have held that "[a] court abuses its discretion when it requires a cost bond that it knows the party cannot afford." *Id*. at 593; *accord Rumbough v. Equifax Info. Servs., Inc.*, 464 F. App'x 815 (11th Cir. 2012); *Simulnet E. Assocs. v. Ramada Hotel Operating Co.*, 37 F.3d 573, 575-76 (9th Cir. 1994); *Aggarwal*, 745 F.2d at 728-29; *but see, e.g.*, *RLS Assocs., LLC v. United Bank of Kuwait PLC*, 464 F. Supp. 2d 206, 221 (S.D.N.Y. 2006) (noting that in some courts, "[a] party's apparent financial *inability* to pay prospective costs is sufficient in and of itself

---

[1] *See also, e.g.*, *Mould v. NJG Food Serv. Inc.*, 2013 WL 6531778, at *1 (D. Md. Dec. 11, 2013) (setting forth similar factors); *Valenti v. Citigroup, Inc.*, 2013 WL 4407065, at *5 (S.D.N.Y. Aug. 16, 2013) (same); *Hartnett v. Catholic Health Initiatives Mountain Region*, 47 F. Supp. 2d 1255, 1256 (D. Col. 1999) (same).

7

to justify an order requiring the posting of a cost bond" (emphasis in original; internal citations omitted)).

3.     Applying the relevant factors to this case, it would be wholly appropriate for the Court to require Mr. Hyatt to post a security bond of $680,000, as a condition of his proceeding to trial in these actions.

While the USPTO does not have a particular reason to doubt Mr. Hyatt's ability to pay at the end of this litigation, he is an individual, he resides in Nevada, and he has no co-plaintiff who is domiciled in this district or—at least to the USPTO's knowledge—any ownership of attachable property here. *See Taylor*, No. 1:15-cv-1607, slip op. at 4 (requiring bond where plaintiff lived outside of jurisdiction—in that case abroad); *cf. Hawes*, 535 F.2d at 144. Further, Mr. Hyatt has explained that he does not accept his obligation to pay "all the expenses" of the proceedings; nor has he provided any reason why a bond is not necessary in these circumstances. *See Taylor*, No. 1:15-cv-1607, slip op. at 4 (plaintiff's "failure to appreciate his obligation to pay the USPTO's expenses" supported bond requirement).

Additionally, while some courts consider the "likelihood of success on the merits" when assessing a motion for a security bond, *Hawes*, 535 F.2d at 144, that inquiry is irrelevant here, where section 145 expressly provides that Mr. Hyatt will necessarily bear "[a]ll the expenses," regardless of the outcome. *Hyatt*, 625 F.3d at 1337 (noting that "Congress imposed on the applicant the heavy economic burden of paying '[a]ll the expenses of the [section 145] proceedings' regardless of the outcome" (quoting 35 U.S.C. § 145)), *aff'd*, 132 S. Ct. 1690 (2012).

While some courts have also considered a party's financial ability to pay in determining whether a bond is appropriate, this factor also should not enter the analysis here. Unlike typical "prevailing party" cost transfers (but similar to its analog in trademark law, 15 U.S.C. § 1071(b)(3)), section 145 is "a straightforward funding provision, designed to relieve the

8

[US]PTO of the financial burden that results from an applicant's election to pursue the more expensive district court litigation." *Shammas*, 784 F.3d at 226 (discussing 15 U.S.C. § 1071(b)(3)). Thus, imposing a bond here would not "limit[] . . . access to the courts because of a party's impecunious circumstance," *Simulnet E. Assocs.*, 37 F.3d at 576; rather, it simply ensures that the USPTO will be able to recover the expenses to which it will be legally entitled at the end of these proceedings.  And, as already mentioned, the USPTO believes that Mr. Hyatt has, at least in the past, had some wealth.  *See, e.g.*, *Franchise Tax Bd. of Cal.*, 136 S. Ct. at 1279-80.

In sum, in providing for the right to judicial review under section 145, Congress made the express choice to condition that review on the plaintiff's assuming "[a]ll the expenses of the proceedings." 35 U.S.C. § 145.  As Mr. Hyatt has failed to indicate that he accepts this obligation and "there is reason to believe" that the USPTO "will find it difficult to collect its [expenses]" when the litigation ends, *Gay*, 682 F.3d at 594, imposing a $680,000 security bond would be fair and appropriate.  While the USPTO expects its expenses to total more than $680,000, payment of this bond will substantially ensure that the USPTO can ultimately recover the full expenses to which it will be legally entitled.  The USPTO thus respectfully requests that the Court impose a $680,000 security bond on Mr. Hyatt, as a condition of his proceeding to trial in these actions.

Counsel for the USPTO has conferred with counsel for Mr. Hyatt, who stated that Mr. Hyatt opposes this motion.

Dated:  March 17, 2017                     Respectfully submitted,

                                                                CHANNING D. PHILLIPS, D.C. Bar #415793
                                                                United States Attorney

                                                                DANIEL F. VAN HORN, D.C. Bar #924092
                                                                Chief, Civil Division

                                                          By:   */s/ Robert E. McBride*
                                                                        JASON COHEN, ME Bar #004465
                                                                        Assistant United States Attorney
                                                                        ROBERT E. McBRIDE, D.C. Bar #488172
                                                                        Special Assistant United States Attorney
                                                                        THOMAS W. KRAUSE, D.C. Bar #430552
                                                                        Special Assistant United States Attorney
                                                                        United States Attorney's Office, Civil Division
                                                                        555 Fourth Street, NW
                                                                        Washington, DC  20530
                                                                        Tel:  202.252.2523
                                                                        Fax: 202.252.2599
                                                                        Email:   jason.cohen@usdoj.gov
                                                                                   robert.mcbride@uspto.gov

                                                             *Counsel for Defendant*

**EXHIBIT LIST**

| NUMBER | | EXHIBIT |
|---|---|---|
| 1 | January 24, 2013 | Letter from S. Margolies to J. Nichols RE: Case No. 05-2310 |
| 2 | March 4, 2013 | Letter from J. Nichols to S. Margolies RE: Case No. 05-2310 |
| 3 | March 22, 2013 | Letter from S. Margolies to J. Nichols RE: Case No. 05-2310 |
| 4 | April 4, 2013 | Letter from M. Forman to J. Nichols RE: Case No. 05-2310 |
| 5 | April 10, 2013 | Letter from A. Panner to M. Forman RE: Case No. 05-2310 |
| 6 | February 20, 2014 | Letter from S. Margolies to A. Panner RE: Case No. 05-2310 with exhibits A-E |
| 7 | February 27, 2014 | Letter from M. Forman to A. Panner RE: Case No. 09-1872 with exhibits A-C |
| 8 | March 6, 2014 | Letter from A. Panner to S. Margolies and M. Forman RE: Case Nos. 05-2310 and 09-1872 |
| 9 | March 12, 2014 | Letter from M. Forman to A. Panner RE: Case Nos. 05-2310 and 09-1872 |
| 10 | April 10, 2014 | Letter from M. Forman to A. Panner RE: Case Nos. 05-2310 and 09-1872 |
| 11 | February 12, 2014 | Invoice for Castleman Services |
| 12 | February 20, 2014 | Invoice for Court Reporter for Hite Deposition |
| 13 | February 3, 2014 | Invoice for Shipment of Hite Deposition Materials |
| 14 | | Spreadsheet of all USPTO expenses |

**CERTIFICATE OF SERVICE**

I hereby certify that on March 17, 2017, the attached USPTO Motion to Require Mr. Hyatt to Post a Bond was delivered electronically to the following counsel for Mr. Hyatt:

Aaron M. Panner
Thomas B. Bennett
KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W.
Suite 400
Washington, D.C. 20036
apanner@khhte.com
tbennett@khhte.com

Andrew M. Grossman
Paul M. Levine
Baker & Hostetler LLP
1050 Connecticut Ave., N.W.
Suite 1100
Washington, D.C. 20036
agrossman@bakerlaw.com
pmlevine@bakerlaw.com

　　　　　　*/s/ Robert E. McBride*　　　　
ROBERT E. MCBRIDE
Special Assistant United States Attorney